The opinion of the Court was delivered by
Johnston, J.
There may be circumstances of suspicion in this case. But it is a very solemn act to set aside the will of a testator and the legal rights of parties; and it should not be done unless strong grounds appear to support such a proceeding.
By the third clause of the Statute of 1841, 11 Stat., 154, it is declared, “that any bequest, gift, or conveyance, of any slave or slaves, accompanied with a trust or confidence, either secret or expressed, that such slave, or slaves, shall be held in nominal servitude only, shall be void and of no effect; and the donee, or trustee, shall be liable to deliver up such slave, or slaves, or account for the value thereof, for the benefit of the next of kin of the person making such bequest, gift, or conveyance.”
This law has been supposed to be violated by the following provision in the will of the late Mrs. Williman:
“I give and bequeath to my good friends, Dr. John Bel-linger, Clement H. Stevens, Thomas Lehre, and Charles Postell Dawson, and the survivors and survivor of them, my faithful negro slaves, George, Sam, Francis, Edwin, Sarah and Rose; with a request that they will extend to the said slaves all the indulgence, privilege and consideration which the law will allow them, in the character of owners, to extend to them.”
The legatees, in their answer, explicitly deny that there was or is any trust or confidence, secret or expressed, accompanying said bequest, to hold said slaves in a condition of *253 virtual freedom or nominal servitude; and one of them, who was examined at the instance of the plaintiff, deposed that he would regard these slaves as much his as the rest of his property, except as affected by survivorship, and would appropriate the wages to his own use.
It seems to the Court that this is a sufficient refutation of the existence of a secret trust or understanding. The case must then be left to depend upon what is expressed on the face of the will. I do not, for myself, see that an intention entertained by the testatrix, but not made known to the legatees, nor participated in by them, would be sufficient to affect their right of property in the slaves bequeathed to them; nor do I see that such a point arises under this clause of the statute, the terms of which do not refer to the intention of the person making the gift. If I remember the cases of Belcher, McKelvey and Tucker, referred to in the decree, they arose under another clause, relating to provisions for removing slaves from the State, with intention to emancipate them.
The case depends not upon the intention entertained, but upon that expressed by this testatrix; and upon this the law was well laid down by Chancellor Dunkin, in Ford vs. Dangerfield, 8 Rich. Eq., 102: “There is nothing in the letter or the policy of the law, which prohibits a testator, in bequeathing a slave, or slaves, to his son, to bespeak for them, or either of them, his kind treatment, or the mode of treatment. The relation of master and slave remains the same. The rights and obligations of proprietorship are unimpaired.”
“ Circumstances might induce the son to change his treatment, in consequence of the conduct of the slaves.”
And the great authority of Lord Eldon is thus brought out: “ He observed that, in the course of the discussion, a doubt had been raised, how far it was competent for a testator to give to his friend a personal estate, to apply it to such purposes of. bounty, not arising to trust, as the testator, himself, would have been likely to apply it to. That question, *254 as far as this Court has to do with it, depends altogether upon this: if the testator meant to create a trust, and not to make an absolute gift, but the trust is ineffectually created, is not expressed at all, or fails, the next of kin take. On the other hand, if the party is to take, himself, it must be upon this ground, according to the authorities: that the testator did not mean to create a trust, but intended a gift to that person for his own use and benefit; for if he was intended to have it entirely in his own power and discretion, whether to make the application or not, it is absolutely given, and it is the effect of his own will, and not the obligation imposed by the testament, the one inclining, the other compelling him to execute the purpose. But if he cannot be, or was not intended to be, compelled, the question is not then upon a trust that has failed, or the intent to create a trust; but the will, must be read as if no such intention was expressed, or to be discovered in it.” (Vide also, 8 Rich. Eq., 108-9.)
“Prima facie, an absolute interest is given, and the question is, whether precatory, not mandatory, words impose a trust upon that person ?”
To this well established doctrine, this Court agrees; and it is as little satisfied that to bequeath slaves with a request that the legatee shall extend to them “ all the indulgence, privilege and consideration which the law will allow them, in the character of owners, to extend to them,” takes away their right of property in the slaves, as it is that such treatment is opposed to the policy of the law.
Before leaving this part of the case, it may be proper to say, that it is unnecessary to decide the question whether the escheator is competent to raise this question, or whether gifts of this description are voidable only by the next of kin. That point was not necessarily involved in Vose vs. Hanahan, 10 Rich., 469, where it is supposed to have been decided; and I have too much doubt upon it to commit myself until it comes directly before the Court.
The next question arises under the 4th sec. of the Act of *255 1841, 11 Stat., 154,which declares that “any devise” or bequest to a slave or slaves, “ or to any person upon a trust or confidence, secret-or expressed, for the benefit of any slave or slaves, shall be null and void:”
It has been supposed that this provision is violated by the following legacy of this testatrix:
“ I give to my friends, Dr. John Bellinger, &c.,” the sum of $2,000, (increased by a codicil,) to enable them to support the said slaves, George, &c., “ when they, from age or sickness, may become chargeable upon them.”
Here again the legatees deny all secret trust, and claim the legacy, leaving the question to be decided, whether any trust arises upon the face of the will.
After the authorities, upon the distinction between cases, where a legal benefit passes to the legatee, to be used as he pleases, and cases where the legatee is not intended to have the beneficial interest, it is only necessary to refer to the case of Benson vs. Whitham, 6 Cond. Eng. Chan. Rep., 304 — 5, where the very point is decided that a gift to enable the legatee to confer a bounty is not a trust, but a beneficial legacy. How can a gift to the master be a legacy or benefit to the slave, except at the master’s discretion ?
It is ordered, that the decree be reversed, and the bill dismissed.
O’Neall, C. J., and Wardlaw, J., concurred.

Decree reversed.